UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CHERYL EVANS,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BRYAN DEN HARTOG,<br><br>　　　　　Defendant. | 5:16-CV-05060-KES<br><br><br>ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART |

Defendant, Bryan Den Hartog, moves for summary judgment on plaintiff, Cheryl Evans's, claim for medical negligence based on patient abandonment and her request for punitive damages. Evans responded to Dr. Den Hartog's statement of material facts and filed an affidavit of her expert witness, but did not file a responsive brief to the motion. After considering the motion for summary judgment, the court grants it in part and denies it in part.

**FACTS**

Dr. Den Hartog is an orthopedic surgeon who previously practiced in Rapid City, South Dakota. Docket 33 at 1. On July 10, 2014, Dr. Den Hartog operated on Evans at Black Hills Surgical Hospital performing a right knee arthroscopy to correct a right lateral meniscus tear. *Id.* The surgical procedure was finished at 9:20 a.m. *Id.* During the procedure, Evans suffered a then unknown vascular injury to the popliteal artery in her knee. *Id.* at 2. While Evans was in recovery, the staff was unable to palpate or feel the pulses in the

artery in her foot. *Id.* Dr. Den Hartog was alerted to the problem, but he was already in another operative room and had another patient anesthetized for surgery. *Id.* It is disputed as to whether or when Dr. Den Hartog evaluated Evans. *Id.* No other peripheral vascular credentialed surgeons were available to assist at Black Hills Surgical Hospital. *Id.*

Dr. Den Hartog called Dr. Orecchia, a vascular surgeon who was out of town, and told him there may have been a disruption of the popliteal artery and asked for his advice. *Id.* at 3. Dr. Orecchia told Dr. Den Hartog that Dr. Takara was on-call for vascular emergencies at Rapid City Regional Hospital and the patient should be transferred to Regional for evaluation. *Id.* Evans was transferred from Black Hills Surgical Hospital to the emergency room at Regional. *Id.* at 4.

Evans arrived at the Regional emergency department at 11:19 a.m. on July 10, 2014, and was seen at 11:39 a.m. *Id.* at 5. Dr. Takara was unavailable, but Dr. Tuma, an interventional cardiologist, was available. *Id.* at 4. Dr. Tuma examined Evans after she arrived and found she very likely had temporary thrombosis of the vessel with spontaneous recanalization. *Id.* Dr. Tuma placed a stent and blood flow was restored. *Id.* at 6. Dr. Den Hartog talked to Dr. Tuma by phone to get an update on Evans's condition on the day of surgery. *Id.*

Evans was discharged from Regional on July 12, 2014, two days after Dr. Tuma placed the stent. *Id.* at 7. Evans saw Dr. Den Hartog at his office on July

2

16 and July 23 and may have been seen by him on July 11, 2014, at Regional. *Id.*

On July 29, 2014, Evans called Dr. Tuma's office complaining of pain and a hard knot behind her right knee. *Id.* When she arrived at Dr. Tuma's office at 4:00 p.m. on the 29th, she was in serious pain and was taken to the emergency room at Regional. *Id.* She was admitted to the cardiac interventional unit at Regional in Dr. Tuma's care. *Id.* An ultrasound showed blood flow through the popliteal artery remained normal, but the pseudoaneurysm, or hematoma, had enlarged significantly. *Id.* at 8. The stent was in place, but Dr. Tuma did not know why there was continued leakage. *Id.* On July 31, 2014, Evans was scheduled to have Dr. Orecchia evacuate, or remove, the hematoma. *Id.* When Dr. Orecchia entered Evans's knee to evacuate the hematoma, he found the bleeding site was actually the popliteal artery, because the artery had pulled away from the stent on each end. *Id.* Dr. Orecchia extended the dissection to get control of the artery, clamp the artery, and reconstruct the artery with a Gor-Tex graft. *Id.* Evans was discharged from Regional by Dr. Orecchia on August 4, 2014. *Id.*

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the

3

nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Evans alleges two claims against Dr. Den Hartog. First, that Dr. Den Hartog breached his professional duty of care to Evans by abandoning her during a medical emergency. Second, that Dr. Den Hartog's acts and omissions constituted reckless disregard for the health and safety of Evans entitling her to an award of punitive damages. Dr. Den Hartog moves for summary judgment on both claims.

## I.  As a matter of law, did Dr. Den Hartog abandon Evans?

Abandonment is a recognized basis for liability of a physician to a patient.[1] *See, e.g.*, *Warwick v. Bliss*, 195 N.W. 501 (S.D. 1923). "'Abandonment' of a patient is the unilateral severance by the physician of the professional relationship between [the physician] and the patient without reasonable notice at a time when continuing medical attention is still a necessity." 3 AM. JUR. 2D 117 *Proof of Facts* § 1 (2017). To prove abandonment, "[t]here must be evidence that the physician has terminated the relationship at a critical stage of the patient's treatment, the termination was done without reason or sufficient notice to enable the patient to procure another physician, and the patient is injured as a result thereof." *Manno v. McIntosh*, 519 N.W.2d 815, 821 (Iowa Ct. App. 1994). An express declaration of termination of services is not necessary to prove abandonment. *Id.* at 820. Rather, abandonment can be proven by a physician's failure to see the patient at intervals necessary for proper treatment. *Id.*

Here, Evan's expert witness, Dr. Larry Teuber, opines that Evans sustained a vascular injury during surgery that constituted a surgical emergency. Docket 35-2 at 2. He states that Dr. Den Hartog had a medical responsibility to ensure that Evans was directly transferred to the care of a competent and capable general or vascular surgeon and that the physician accepted care of Evans. *Id.* at 3. In his opinion, the standard of care required

---

[1] South Dakota substantive law governs this diversity action. *See Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 886 (8th Cir. 2006).

Dr. Den Hartog to have verbal contact with the surgeon or physician who was to accept the patient and assume responsibility for the treatment of Evan's surgical complication. *Id.* In Dr. Teuber's opinion, because Evans was transferred to the Emergency Department of Rapid City Regional Hospital without prior contact with a capable and qualified surgeon, Dr. Den Hartog engaged in patient abandonment in reckless disregard for the safety and welfare of Evans. *Id.* In his opinion, the significant and unnecessary delay in reestablishing blood flow to the distal extremity, which was caused by Dr. Den Hartog failing to establish direct contact with and transfer of care to a capable surgeon, was the cause of Evans's current disability. *Id.* at 4.

After considering the evidence and the expert opinion of Dr. Teuber, the court finds that a genuine question of fact exists as to whether Dr. Den Hartog engaged in patient abandonment. Dr. Tueber's testimony is sufficient, if the jury believes his testimony, to establish all the elements of abandonment. This issue should be determined by a jury.

II. **Is there evidence of willful and wanton misconduct sufficient to support an award of punitive damages?**

Under South Dakota law, claims for punitive damages are prohibited unless expressly authorized by statute. SDCL § 21-1-4. Punitive damages are authorized by SDCL § 21-3-2, which provides in pertinent part:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

6

Thus, punitive damages are appropriate when the defendant has acted with oppression, fraud, or malice.

Evans has not cited to any South Dakota cases where an award of punitive damages was upheld in a medical malpractice lawsuit. Dr. Den Hartog cited multiple cases where the court denied an award of punitive damages after finding that mere negligence is not equivalent to willful and wanton misconduct. *See Baxter v. Campbell*, 97 N.W. 386 (S.D. 1903); *Benson v. Giordano*, No. 05-4088, 2008 WL 2390835, at *3 (D.S.D. June 9, 2008); *DeNeui v. Wellman*, No. 07-4172, 2009 WL 4847086, at *6 (D.S.D. Dec. 9, 2009); and *Nissen v. Johnson*, No. 09-4166, 2011 WL 4832561, at *4-5 (D.S.D. Oct 12, 2011). The only evidence that Evans provided to the court to support a finding that Dr. Den Hartog's conduct consisted of anything more than mere negligence is the affidavit of Dr. Teuber that states that Dr. Den Hartog's action constitute reckless disregard for the safety and welfare of Evans. But an expert's opinion is not admissible to prove state of mind, because a party's state of mind is not within the knowledge of an expert. *See Neuharth v. Nacco Materials Handling Group, Inc.,* No. 01-4034, 2002 WL 34700601, at *5 (D.S.D. Dec. 17, 2002). And the facts viewed in the light most favorable to Evans, do not establish anything more than mere negligence. Because Evans has not identified any evidence to show that Dr. Den Hartog was guilty of oppression, fraud or malice, the court finds there are no questions of material fact on the

issue of punitive damages. As a result, Dr. Den Hartog is entitled to partial summary judgment on the issue of punitive damages. Thus, it is

ORDERED that Dr. Den Hartog's motion for summary judgment (Docket 31) is granted in part on the issue of punitive damages and denied in part on the issue of abandonment.

Dated this 29th day of August, 2017.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE